**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**ANDERSON/GREENWOOD DIVISION**

| | |
|---|---|
| Hunter Wilbanks, Russell Wilbanks, Risa Baldwin, ) | |
| Plaintiffs, ) | Civil Action No. 8:25-cv-4851-TMC |
| ) | |
| vs. ) | |
| ) | |
| Nissan North America Inc., Nissan Motor Company Ltd., Nissan Technical Center North America Inc., U.S. Bank National Association, ) | **ORDER** |
| ) | |
| Defendants. ) | |
| ) | |
| Bowman and Brooke, LLP, ) | |
| Intervenor Defendant. ) | |
| ) | |
| U.S. Bank National Association, ) | |
| Counter Claimant, ) | |
| ) | |
| vs. ) | |
| ) | |
| Risa Baldwin, Nissan Motor Company Ltd., Nissan North America Inc., Nissan Technical Center North America Inc., Hunter Wilbanks, Russell Wilbanks, Euse Investments Corporation, Cathey and Strain, LLC, ) | |
| Counter Defendants. ) | |

This action arises out of a dispute regarding a settlement payment that was fraudulently diverted during a wire transfer. Now before the court is the magistrate judge's Report and Recommendation ("Report"), (ECF No. 111), recommending the undersigned grant U.S. Bank's Motion to Dismiss, (ECF No. 80), and deny Bowman and Brooke's motion to intervene, (ECF No.

1

79). Bowman and Brooke filed objections to the Report, (ECF No. 113), and Hunter Wilbanks, Russell Wilbanks, and Risa Baldwin (collectively "Plaintiffs") filed a reply, (ECF No. 114). The matter is ripe for review, and the court finds a hearing is not necessary as the issues have been fully briefed. Local Civ. Rule 7.08 (D.S.C.).

## STANDARD OF REVIEW

The recommendations set forth in the Report have no presumptive weight, and this court remains responsible for making a final determination in this matter. *Elijah v. Dunbar*, 66 F.4th 454, 459 (4th Cir. 2023) (citing *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976)). The court is charged with making a *de novo* determination of those portions of the Report to which a specific objection is made, and the court may accept, reject, modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). Thus, "[t]o trigger de novo review, an objecting party 'must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" *Elijah*, 66 F.4th at 460 (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). However, the court need only review for clear error "those portions which are not objected to—including those portions to which only 'general and conclusory' objections have been made[.]" *Dunlap v. TM Trucking of the Carolinas, LLC*, 288 F. Supp. 3d 654, 662 (D.S.C. 2017); *see also Elijah*, 66 F.4th at 460 (noting that "[i]f a litigant objects only generally, the district court reviews the magistrate's recommendation for clear error only"). Furthermore, "'the court is not obligated to consider new arguments raised by a party for the first time in objections to the magistrate's Report.'" *Floyd v. City of Spartanburg S.C.*, Civ. A. No. 7:20-cv-1305-TMC, 2022 WL 796819, at *9 (D.S.C. Mar. 16, 2022) (quoting *Elliott v. Oldcastle Lawn & Garden, Inc.*, No. 2:16-cv-01929-DCN, 2017 WL 1206408, at *3 (D.S.C. Mar. 31, 2017));

*see also Elijah*, 66 F.4th at 460 n. 3 (noting "district court judges are not required to consider new arguments posed in objections to the magistrate's recommendation").

## BACKGROUND

The magistrate judge summarized the factual allegations and procedural history of this case in his Report. No party objects to his summation. Therefore, the court incorporates that portion of the Report herein verbatim.

**Procedural History**

> Hunter Wilbanks ("Hunter"), Russell Wilbanks ("Russell"), and Risa Baldwin ("Baldwin") (together "Plaintiffs") commenced this action on June 4, 2025, by filing a Complaint against Nissan North America Inc., Nissan Motor Company Ltd., Nissan Technical Center North America Inc. (together "Nissan Defendants"), and U.S. Bank (together "Defendants"). ECF No. 1. The Complaint asserts a claim against the Nissan Defendants for breach of contract, *id*. at 8, ¶¶ 39–43, and a claim against U.S. Bank for constructive trust, *id*. at 8–9, ¶¶ 44–50.

> On July 21, 2025, U.S. Bank filed an Answer to the Complaint and a Counterclaim in the Nature of Interpleader (the "Interpleader Counterclaim"), naming the following Counterclaim Defendants: Hunter, Russell, Baldwin, the Nissan Defendants, Euse Investments Corporation ("Euse"), and Cathey and Strain, LLC ("Cathey and Strain") (together the "Counterclaim Defendants"). ECF No. 21. The Nissan Defendants filed an Answer to Plaintiffs' Complaint on July 28, 2025, and an Answer to U.S. Bank's Interpleader Counterclaim on August 7, 2025. ECF Nos. 24; 33. Plaintiffs filed an Answer to U.S. Bank's Interpleader Counterclaim on August 11, 2025. ECF No. 35. Cathey and Strain filed an Answer to U.S. Bank's Interpleader Counterclaim on August 11, 2025. ECF No. 36.

> On August 25, 2025, Euse purported to file a *pro se* Answer to U.S. Bank's Interpleader Counterclaim. ECF No. 42. That Answer was submitted by Lloyd G. Bibbs Jr. ("Bibbs"), appearing *pro se*, and stated as follows:

>> ["I Lloyd G. Bibbs Jr. is denying the civil action suit against me filed on 7/28/2025 in South Carolina Courts. My identity was stolen in January of 2025.["]

> *Id*. Based on the certificate of service filed by U.S. Bank, Bibbs is listed as the registered agent for Euse. ECF No. 41-1.

> On July 21, 2025, U.S. Bank filed a Motion to Deposit Funds, seeking to deposit certain funds held in an account at U.S. Bank into the Court's registry. ECF

No. 19. Plaintiffs filed a Response in Opposition to U.S. Bank's Motion. ECF No. 31. On September 4, 2025, the Court entered an Order granting U.S. Bank's Motion, ordering as follows:

> ["]IT IS ORDERED that U.S. Bank shall deposit the Disputed Funds, in the amount of $1,359,502.21, in the form of a check payable to the Clerk of the United States District Court for the District of South Carolina within ten (10) business days of the date of this Order to be held in the Courts registry in accordance with Local Civil Rule 67.01 (D.S.C.) until such a time as the Court makes an ownership determination. A copy of this Order shall accompany the deposit.

> IT IS FURTHER ORDERED that the Clerk of Court receive, hold, and place the Disputed Funds in an interest-bearing account in accordance with Local Civil Rule 67.01 (D.S.C.), subject to further Order of this Court.

> Finally, IT IS ORDERED that any party having any interest in the Disputed Funds shall plead all claims to the Disputed Funds deposited with the Court on or before September 25, 2025.["]

ECF No. 72. U.S. Bank never deposited the Disputed Funds into the Court's registry. Nevertheless, Plaintiffs filed a Notice of Claim to the Disputed Funds on September 24, 2025. ECF No. 84. No other party filed a notice claiming any right to the Disputed Funds, and the time to do so has lapsed.

On September 18, 2025, U.S. Bank filed the Motion to Dismiss the Interpleader Counterclaim. ECF No. 80. U.S. Bank explained that it no longer had possession of the Disputed Funds, and the Interpleader Counterclaim should therefore be dismissed under Federal Rule of Civil Procedure 41(a)(2). *Id*. Plaintiffs filed an initial Response in Opposition to U.S. Bank's Motion on October 2, 2025. ECF No. 89. However, Plaintiffs requested multiple extensions of time to file an additional response, noting the parties were engaged in discussions that might resolve the issues relevant to U.S. Bank's Interpleader Counterclaim and Motion to Dismiss. ECF Nos. 86; 91; 102. The Court granted those requests. ECF Nos. 87; 92; 105. On October 29, 2025, Plaintiffs filed a supplemental Response to U.S. Bank's Motion, explaining the parties had reached an agreement and that Plaintiffs now consented to the Motion to Dismiss. ECF No. 108. That same day, Cathey and Strain filed a Response to U.S. Bank's Motion, joining in Plaintiffs' supplemental Response and consenting to the dismissal of U.S. Bank's Interpleader Counterclaim. ECF No. 109.

On September 18, 2025, Bowman and Brooke filed a Motion to Intervene. ECF No. 79. By Text Order entered that same day, the Court instructed Bowman and Brooke to clarify through a supplemental brief whether it intended to intervene as a party-Defendant to Plaintiff's Complaint, as a party-Defendant to U.S. Bank's Interpleader Counterclaim, or both. ECF No. 81. On September 24, 2025, Bowman

and Brooke filed a Supplemental Brief explaining that it intended to intervene as both a party-Defendant to Plaintiff's Complaint and a party-Defendant to U.S. Bank's Interpleader Counterclaim. ECF No. 85. On October 2, 2025, Plaintiffs filed a Response in Opposition to Bowman and Brooke's Motion, and on October 9, 2025, Bowman and Brooke filed a Reply. ECF Nos. 89; 94.

**Factual Allegations**

***Plaintiffs' Complaint***

Plaintiffs' Complaint asserts a breach of contract claim against the Nissan Defendants "for failure to pay a sum certain due and owing under a settlement agreement in a personal injury lawsuit." ECF No. 1 at 1, ¶ 1. Hunter was a passenger in a vehicle that was involved in a head-on collision on July 25, 2018. *Id*. at 1, 3, ¶¶ 1, 14. The restraint system in that vehicle failed to restrain or otherwise protect Hunter during the collision, causing him to suffer catastrophic personal injuries. *Id*. at 4, ¶ 15. Plaintiffs filed a lawsuit in the South Carolina Court of Common Pleas for the Tenth Judicial Circuit against the Nissan Defendants at case number 2019-CP-04-01953 (the "Underlying Litigation"), claiming the restraint system in the vehicle was defective. *Id*. at 4, ¶ 16. Because Plaintiff was a minor at the time of the collision, his parents, Russell and Baldwin, were also named Plaintiffs in the Underlying Litigation. *Id*. Plaintiffs were represented in the Underlying Litigation by the law firms of Cathey and Strain and Parham Smith and Archenhold, LLC; and the Nissan Defendants were represented by Bowman and Brooke. *Id*. at 4, ¶ 17. Plaintiffs' counsel in the Underlying Litigation were also counsel of record in a separate, but related, lawsuit against the Nissan Defendants on behalf of another passenger in the same vehicle whose restraint system failed and caused injuries (the "Companion Case"). *Id*. at 4, ¶ 19.

The parties in the Underlying Litigation and the Companion Case settled both cases at the same time on September 16, 2024. *Id*. at 5, ¶ 20. Bowman and Brooke informed Cathey and Strain that the Nissan Defendants would only issue settlement payments by wire transfer and not via check. *Id*. Cathey and Strain insisted on providing the wire instructions for its client trust account to Bowman and Brooke over the telephone due to the risk of email wire fraud. *Id*. at 5, ¶ 21. The settlement payment in the Companion Case was successfully delivered to Cathey and Strain's client trust account on November 13, 2024. *Id*. at 5, ¶ 22. The settlement payment for the Underlying Litigation took longer to finalize. *Id*.

On December 20, 2024, Plaintiffs and the Nissan Defendants entered into a written confidential settlement agreement and release of the Underlying Litigation (the "Settlement Agreement"). *Id*. at 5, ¶ 23. The Settlement Agreement provided for the funding of a structured settlement and also required the Nissan Defendants to make a substantial cash payment (the "Cash Settlement Amount") to Plaintiffs by January 15, 2025. *Id*. On December 21, 2024, Bowman and Brooke confirmed that it did not need Cathey and Strain to resend the account information for its client

trust account because Bowman and Brooke already had that information based on the payment in the Companion Case. *Id*. at 5, ¶ 24. On January 14, 2025, Bowman and Brooke informed Cathey and Strain via email that it also needed the "Swift Code"—which is a publicly available identifier used by banks for international wire transfers—for Cathey and Strain's client trust account because the wire transfer would be sent from an overseas bank account. *Id*. at 5, ¶ 25.

An unknown fraudster (the "Fraudster") obtained access to the email communication from Bowman and Brooke to Cathey and Strain requesting the Swift Code for the client trust account. *Id*. at 6, ¶ 26. The Fraudster conducted an email "spoofing attack" by pretending to be Cathey and Strain and sending a response to Bowman and Brooke from a similar email domain— "@cartheyandstrain" rather than "@catheyandstrain." *Id*. The Fraudster sent Bowman and Brook[e] wire instructions to an account at U.S. Bank, which was a different bank than the bank used for the successful wire transfer in the Companion Case. *Id*. The Fraudster also sent emails to Plaintiffs' counsel that spoofed the email domain of Bowman and Brooke to prevent Plaintiffs' counsel from discovering the ruse. *Id*. The U.S. Bank account listed in the fraudulent wire instructions did not belong to Cathey and Strain, Parham Smith and Archenhold, or Plaintiffs. *Id*. at 6, ¶ 27. The email from the Fraudster containing the fraudulent wire instructions for the U.S. Bank account went to the "spam" or "junk" folder of a paralegal at Bowman and Brooke on January 15, 2025. *Id*. at 6, ¶ 28. Bowman and Brooke provided the Nissan Defendants and their insurer, Sompo International ("Sompo"), with the U.S. Bank account information identified in the fraudulent email to receive the wire transfer of the Cash Settlement Amount. *Id*. at 6–7, ¶¶ 29, 30.

On January 21, 2025, Sompo initiated a wire payment of the Cash Settlement Amount in accordance with the fraudulent wire instructions. *Id*. at 7, ¶ 31. Sompo's wire transfer to the Fraudster's U.S. Bank account was completed by January 23, 2025. *Id*. at 7, ¶ 32. On January 23, 2025, Bowman and Brook informed Cathey and Strain that it had been notified that the U.S. Bank account did not belong to Cathey and Strain, who immediately confirmed that the account did not belong to them. *Id*. at 7, ¶ 33.

On January 28, 2025, Bowman and Brooke informed Cathey and Strain that the Nissan Defendants would issue a check to Plaintiffs for the Cash Settlement Amount, although the Nissan Defendants never issued a check. *Id*. at 7, ¶ 34. According to Plaintiffs, a substantial portion of the Cash Settlement Amount was at the time of filing the Complaint still in the U.S. Bank account of the Fraudster. *Id*. at 8, ¶ 36. Plaintiffs contend that the Nissan Defendants claim that they satisfied their obligations under the Settlement Agreement because they transmitted the payment of the Cash Settlement Amount in conformity with the wire instructions provided to them by the Fraudster. *Id*. at 8, ¶ 37

Based on these allegations, Plaintiffs assert a claim for breach of contract against the Nissan Defendants, asserting that they "have materially breached their

6

obligations under the Settlement Agreement by failing to pay the Cash Settlement Amount to Plaintiffs, as required by the Settlement Agreement." *Id*. at 8, ¶¶ 39–43. Plaintiffs also assert a claim for constructive trust as to U.S. Bank. *Id*. at 8–9, ¶¶ 44–50.

### U.S. Bank's Interpleader Counterclaim

U.S. Bank's Interpleader Counterclaim provides the following additional relevant allegations. ECF No. 21. According to records with the Illinois Secretary of State, Euse is a corporation formed under the laws of the State of Illinois on January 18, 2024, and was dissolved as of June 13, 2025. *Id*. at 10, ¶ 13. Prior to January 21, 2025, Euse opened a business account with U.S. Bank and was assigned an account number ending in '7361 (the "Euse Account"). *Id*. at 10, ¶ 14. On January 21, 2025, Sompo caused its bank, Mizuho Bank, Ltd. ("Mizuho"), to issue a wire transfer (the "Disputed Wire") to the Euse Account. *Id*. at 11, ¶ 15. Sompo's wire instructions referenced the Euse Account by account number and identified the name on the account as "Cathey and Strain LLC," when in fact the Euse Account belonged to Euse and not Cathey and Strain. *Id*. at 11, ¶ 16. Because of the Disputed Wire, the funds were deposited into the Euse Account and made available to Euse. *Id*. at 11, ¶ 17.

On February 22, 2025, the United States Secret Service notified U.S. Bank of the existence of the Disputed Wire. *Id*. at 11, ¶ 18. Prior to that date, U.S. Bank had not received notice of an alleged fraudulent wire transfer and had no reason to believe that the Euse Account contained funds allegedly belonging to Plaintiffs. *Id*. After being notified of the Disputed Wire, U.S. Bank determined that 26 outgoing wires had depleted most of the amount of the wire. *Id*. at 11, ¶ 19. U.S. Bank restricted further withdrawals from the Euse Account, initiated recalls of the outgoing wire transfers, and was able to retain and/or recover a portion of the amount of the Disputed Wire. *Id*. at 11, ¶ 20. Per the Interpleader Counterclaim, as of April 1, 2025, the total amount in the Euse Account was $1,359,502.21—i.e., the Disputed Funds. *Id*. at 11, ¶ 21.

U.S. Bank sought a hold harmless and indemnity agreement ("HHL") from Sompo and Mizuho. *Id*. at 11, ¶ 22. Mizuho would not agree to provide U.S. Bank with an HHL, so U.S. Bank declined to release the Disputed Funds. *Id*. at 12, ¶ 23. U.S. Bank asserts it is "a mere custodian of the Disputed Funds" and does not claim an interest in the Disputed Funds. *Id*. at 12, ¶ 25. U.S. Bank contends that, while it believes "that one or more of the Plaintiffs are entitled to the Disputed Funds, U.S. Bank has a real and reasonable fear that, if it releases the Disputed Funds to Plaintiffs, it is or will be subject to double liability and/or conflicting claims." *Id*. at 11–12, ¶ 29.

According to U.S. Bank, although Hunter appears to be the real party in interest to the Disputed Funds, U.S. Bank does not know whether such funds should be released to Hunter, individually, or to Russell and/or Baldwin in a representative

capacity. *Id*. at 13, ¶ 30. U.S. Bank also asserts that Cathey and Strain may be able to assert a claim to the Disputed Funds because it was the intended beneficiary of the Disputed Wire, that Euse as the owner of the Euse Account may be able to assert a claim to some or all of the Disputed Funds, and that the Nissan Defendants may be asserting a right to the Disputed Funds. *Id*. at 13, ¶¶ 31–33. As such, according to U.S. Bank, "[d]ue to the legitimate possibility that release of the Disputed Funds to any particular Counterclaim Defendant could subject U.S. Bank, a disinterested stakeholder, to double liability and/or conflicting claims," U.S. Bank brings a claim for statutory interpleader under 28 U.S.C. § 1335. *Id*. at 13, ¶ 34. U.S. Bank requests that the Court permit it to deposit the Disputed Funds into the Court's registry. *Id*. at 14. U.S. Bank also seeks a final judgment enjoining the Counterclaim Defendants from instituting or continuing any action against U.S. Bank for recovery of the disputed property, requiring any Counterclaim Defendants claiming an interested in the Disputed Funds to interplead and settle among themselves their rights to the funds, and discharging U.S. Bank from all liability regarding the Disputed Funds. *Id*.

(ECF No. 111 at 2-10).

## DISCUSSION

### I.     U.S. Bank's Motion to Dismiss

Pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."),[1] U.S. Bank filed a motion to voluntarily dismiss with prejudice its counterclaim in the nature of interpleader, noting that it "no longer has any basis whatsoever to prosecute the Counterclaim, and cannot obtain the relief it was seeking since it no longer has the Disputed Funds."[2] (ECF No. 80

---

[1] This portion of the rule states:

> Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending independent adjudication. Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

Fed. R. Civ. P. 41(a)(2).

[2] While Rule 41(a)(1) allows for the voluntary dismissal of a claim without a court order under certain circumstances, those circumstances are not present here because some of the counter-defendants have already filed an answer to the counterclaim. (ECF Nos. 33, 35, 36).

at 6). It explained, "[w]hile attempting to comply with the Court's deadline to deposit the funds, it was discovered that U.S. Bank's claims department had returned the Disputed Funds to Mizuho Bank on September 8th." *Id* at 3. In this same motion, U.S. Bank requests relief from this court's September 4, 2025 order at ECF No. 72, which granted U.S. Bank's motion to deposit the Disputed Funds and directed the Clerk of Court to receive, hold, and place the Disputed Funds in an interest-bearing account in accordance with Local Civil Rule 67.01 (D.S.C.) subject to further order of the court. According to U.S. Bank, "[t]here is no longer a basis for U.S. Bank's Motion for Leave to Deposit Funds, and, therefore, no longer a need for an order permitting U.S. Bank to deposit the Disputed Funds into the Court's registry" due to the change in circumstances regarding the Disputed Funds no longer being in the bank's possession. *Id*. at 8.

As stated herein, Plaintiffs consent to U.S. Bank's motion to dismiss its interpleader counterclaim, explaining they executed "an agreement . . . that would involve the Nissan Defendants authorizing their insurer to send the funds at issue in U.S. Bank's Interpleader Counterclaim to the Plaintiffs, which would reduce Plaintiffs' claim for damages on its breach of contract claim on a dollar-for-dollar basis." (ECF No. 108 at 2). They further provide that "[a] condition precedent of the fulfillment of the terms of the agreement is that the Court grant U.S. Bank's Counterclaim Dismissal Request." *Id*.

Based on the circumstances set forth above, the magistrate judge determined "[t]he Interpleader Counterclaim . . . no longer serves any purpose as to the claims in this case." (ECF No. 111 at 15). He considered the factors for dismissing a claim under Rule 41(a)(2) and concluded U.S. Bank's motion to dismiss should be granted and that its interpleader claim should be dismissed *with* prejudice. *Id*. at 15-16. He explained that, "with the dismissal of the Interpleader Counterclaim, the Court's September 4, 2025, Order concerning the Disputed Funds at issue in the

Interpleader Counterclaim will have no legal effect." *Id*. at 16. No party objects to the magistrate judge's recommendation concerning *U.S. Bank's* motion. Accordingly, the court must only review that recommendation for clear error. Having found none, the court adopts the recommendation, grants U.S. Bank's motion to dismiss, and dismisses U.S. Bank's interpleader claim with prejudice.

## II.     Bowman & Brooke's Motion to Intervene

Approximately three months after this case was filed, Bowman & Brooke filed a motion to intervene pursuant to Fed. R. Civ. P. 24(a)(2) or, alternatively, to be allowed to intervene upon permission of the court pursuant to Fed. R. Civ. P. 24(b). (ECF No. 79). The magistrate judge directed Bowman & Brooke to file a supplemental brief, indicating in what capacity it seeks to intervene in this action. (ECF No. 81). In its response, Bowman & Brooke provided they seek to intervene as a party-defendant in Plaintiff's action and as a party-counterclaim defendant in U.S. Bank's interpleader complaint. (ECF No. 85). Plaintiffs filed a response in opposition to the motion, (ECF No. 89), and Bowman & Brooke filed a reply, (ECF No. 94).

The magistrate judge recommends the motion to intervene be denied ***without prejudice*** on the basis that Bowman & Brooke failed to comply with Fed. R. Civ. P. 24's requirement that a motion to intervene be accompanied by a pleading that sets out the claim or defense for which intervention is sought.  (ECF No. 111 at 16).  While the magistrate judge recognized that the Fourth Circuit Court of Appeals has excused a party's failure to abide by the letter of Rule 24 in very limited circumstances, the magistrate judge determined such circumstances were not present here because, not only did Bowman & Brooke not file a proposed pleading, but its "Motion does not clearly set forth Bowman and Brooke's claims or defenses." *Id*. at 16-17. Bowman & Brooke filed objections to the magistrate judge's recommendation. (ECF No. 113). Included with its objections, is its answer to Plaintiffs' complaint. (ECF No. 113-1).

Fed. R. Civ. P. 24 states, in pertinent part:

(a) **Intervention of Right.** On timely motion, the court must permit anyone to intervene who:

>   (1) is given an unconditional right to intervene by federal statute; or

>   (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

(b) **Permissive Intervention.**

>   (1) *In General*. On timely motion, the court may permit anyone to intervene who:

>>   **(A)** is given a conditional right to intervene by a federal statute; or

>>   **(B)** has a claim or defense that shares with the main action a common question of law or fact.

>   (2) ***By a Government Officer or Agency***. . . .

>   (3) ***Delay or Prejudice***. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

(c) **Notice and Pleading Required.** A motion to intervene must be served on the parties as provided in Rule 5. ***The motion must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought***.

Fed. R. Civ. P. 24 (emphasis added). Bowman & Brooke filed its motion seeking relief under subsection (a) or alternatively (b). As stated, however, its motion was not accompanied by a pleading setting forth its claim or defense for which it seeks intervention.

The Fourth Circuit Court of Appeals has determined that "[a]lthough some cases have held that intervention should be denied when the moving party fails to comply strictly with the requirements of Rule 24(c), the proper approach is to disregard non-prejudicial technical defects." *Spring Constr. Co., Inc. v. Harris*, 614 F.2d 374, 376-77 (4th Cir. 1980). In that case, the intervenor

did not accompany its petition with a pleading setting forth the claim for which intervention was sought. *Id.* at 376. Still, the court concluded the petition and accompanying affidavit set forth sufficient facts and allegations to apprise the other party of the intervenor's claims and noted that the intervenor's "failure to file an accompanying pleading was rectified when it filed its amended complaint shortly thereafter, and it does not appear [the other party] was prejudiced by such failure." *Id.* at 377.

In its objections to the Report, Bowman & Brooke argues that, like the intervenor in *Spring*, its failure to attach a pleading to its motion is not fatal. (ECF No. 113 at 6). Unlike the intervenor in *Spring*, however, Bowman & Brooke did not provide the parties with notice of its claims in its motion. Instead, Bowman & Brooke argues it was not required to provide documentary evidence giving notice to the parties as to its claims or defenses because it "is referenced and named in at least sixteen (16) of the fifty (50) paragraphs in the Complaint and within all exhibits incorporated in the Complaint." *Id.* at 5.

Plaintiffs disagree with Bowman & Brooke's contention that it was not required to provide the parties notice of its claims and defenses, and they argue Bowman & Brooke's failure to provide such notice was prejudicial to them. (ECF No. 114 at 3). In highlighting the importance of providing notice of an intervenor's claims and defenses, Plaintiffs note:

> The proposed Answer that [Bowman & Brooke] submits with its objections makes clear that it only seeks to intervene solely as a defendant on Plaintiff's claim against the Nissan Defendants, with no cross-claims or counter-claims of its own. (ECF No. 11[3]-1.) [Bowman & Brooke] cannot intervene solely as a party defendant to Plaintiff's existing breach of contract claim against the Nissan Defendants because it would destroy the Court's diversity jurisdiction over Plaintiff's claims, since Plaintiffs and [Bowman & Brooke] are both citizens of South Carolina.

*Id.* at 3. "On the other hand, if [Bowman & Brooke] asserted any cross-claims or counter-claims against any party, then supplemental jurisdiction would be permitted." *Id.* at 4. Had Bowman &

Brooke submitted its proposed answer with its motion or even set forth sufficient information as to the nature of its claims in the motion itself, the parties would have been aware of this potential jurisdictional issue earlier. However, as the magistrate judge recognized, "[b]ecause the Motion does not clearly set forth Bowman and Brooke's claims or defenses, and without a proposed pleading that does so, the court and the parties [we]re left to guess at what Bowman and Brooke's claims or defenses might be." (ECF No. 111 at 17). Thus, the court agrees with Plaintiffs and the magistrate judge that the deficiencies in Bowman & Brooke's motion are more than just "non-prejudicial technical defects." Accordingly, the court adopts the magistrate judge's recommendation and denies without prejudice Bowman & Brooke's motion to intervene. In doing so, the court expresses no opinion as to whether Bowman & Brooke may otherwise be permitted to intervene under Fed. R. Civ. P. 24.

## CONCLUSION

For the reasons stated, the court **ADOPTS** the magistrate judge's recommendations in the Report, (ECF No. 111), **GRANTS** U.S. Bank's motion to dismiss, (ECF No. 80), and **DENIES WITHOUT PREJUDICE** Bowman & Brooke's motion to intervene, (ECF No. 79). U.S. Bank's interpleader counterclaim is hereby **DISMISSED with prejudice**, and Euse Investments and Cathey and Strain are hereby dismissed as parties to this action.

**IT IS SO ORDERED.**

s/Timothy M. Cain
Chief United States District Judge

January 16, 2026
Anderson, South Carolina

## NOTICE OF RIGHT TO APPEAL

The parties are hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.

13